UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID DISDIER,

     Applicant,

v.                           CASE NO. 8:15-cv-762-SDM-TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____/

### **ORDER**

David Disdier applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for conspiring to commit racketeering, trafficking in illegal drugs, and conspiring to traffic heroin, for which convictions Disdier serves thirty years imprisonment.

### **Facts**[1]

Disdier lived with Jose Rivera and Rivera's girlfriend, Shannon Hernandez. Rivera bought heroin in New York and Colombia, which Disdier and Hernandez helped him sell in Florida. Disdier had a mobile phone on which buyers would call to purchase heroin. Police surveillance resulted in the interception and recording of phone calls between Disdier and various individuals for the purchase of heroin.

---

[1] This factual summary derives from Disdier's brief on direct appeal and the record. (Doc. 16, Exs. 7, 11)

Disdier and Rivera met Fredy Ospina, who helped Rivera import heroin. Ospina arranged for Rivera to pick up heroin in New York. Disdier accompanied Rivera on the trip. During their return to Tampa, the police stopped their vehicle and a subsequent search resulted in the discovery of MDMA, methamphetamine, heroin, and cocaine.

Disdier, Rivera, Ospina, Hernandez, and another co-defendant were arrested. Disdier was charged with racketeering (count one), RICO conspiracy (count two), trafficking in illegal drugs (count nine), trafficking in MDMA (count ten), conspiracy to traffic heroin (count eleven), and conspiracy to traffic MDMA (count twelve). Disdier and Rivera were tried jointly. A jury convicted Disdier on counts two, nine, and eleven and acquitted him on counts one, ten, and twelve. He serves three concurrent sentences of thirty years imprisonment.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Carney's application. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied C the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of ' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).  If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").  When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning."  *Wilson*, 138 S. Ct. at 1192.  "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ."  *Wilson*, 138 S. Ct. at 1192.

The state court on direct appeal affirmed Disdier's convictions and sentences. (Doc. 16, Ex. 13)  The state appellate court affirmed the denial of Disdier's state Rule 3.850 motion for post-conviction relief.  (Doc. 16, Ex. 24)  A state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court

and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Disdier bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

**Ineffective Assistance of Counsel**

Disdier claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Disdier must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Disdier must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Disdier cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers'

performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Disdier must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or

9

(2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 106.  *See also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim C which is governed by the deferential *Strickland* test C through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

## I. <u>Trial court error</u>

**Ground One**

Disdier contends that the trial court violated his rights under the Sixth and Fourteenth Amendments by providing to the jury an English translation of the intercepted telephone calls between Rivera and him, which conversations were originally recorded in Spanish.  Disdier claims that Detective Jose Feliciano, who neither qualified as an interpreter nor personally monitored the original recorded

conversations, translated the Spanish conversation to English and that the English transcripts were provided to the jury while the prosecutor played the Spanish audio recordings during the trial.   Disdier alleges that the "recorded conversations were completely unintelligible to the jurors because the conversations were in Spanish and none of the jurors spoke or understood Spanish." (Doc. 1, p. 5)  As a result, "the jurors had no choice but to displace the actual tape as the sole evidence upon which to rely" and "[t]he transcripts were transformed into independent evidence of the recorded statements." (Id.)

The respondent opposes this ground as unexhausted and procedurally defaulted because Disdier argued on direct appeal only a violation of state law. Disdier in his amended reply recognizes the default but asserts entitlement to federal review under *Martinez v. Ryan*,  566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).  Disdier argues that his appellate counsel failed to assert this ground in the appellate brief.  (Doc. 23 at 3)

An applicant must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."),

and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  Also, an applicant must present to the federal court the same claim presented to the state court.  *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "Mere similarity of claims is insufficient to exhaust."  *Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

When Disdier presented this ground to the state court in his appellate brief he cited only state cases and did not assert a violation of a federal constitutional right. (Doc. 16, Ex. 11 at 26–31 )  Disdier neither cited a federal case or a federal constitutional provision, nor labeled the claim "federal."  Consequently, Disdier did

not "fairly present" this ground to the state court.  *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015) (finding that *Baldwin* and *Lucas* "stand for the proposition that an applicant with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim").

Disdier's failure to present to the state court a federal claim challenging the admission of the transcripts deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. State procedural rules preclude Disdier from returning to state court to present his federal claim in a second, untimely direct appeal.  *See* Fla. R. App. P. 9.140(b)(3).  Disdier's failure to properly present his federal claim in the state court results in a procedural default. *See Shinn v. Ramirez,* 142 S. Ct. 1718, 1732 (2022) (noting that if a prisoner failed to present a federal claim to the state court and the state court would dismiss the claim based on a procedural failure, the claim is technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.") (quoting *Woodford v. Ngo,* 548 U.S. 81, 92–93 (2006)).

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to her actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982).  In other words, an applicant must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

In his amended reply Disdier acknowledges the default of ground one but argues entitlement to federal review under *Martinez* and *Trevino* based on his appellate counsel's failure in the appellate brief to federalize the claim challenging the use of the transcripts.  (Doc. 23 at 2)   Disdier's reliance on *Martinez* and *Trevino* is misplaced.  *Martinez* recognizes a narrow exception to the exhaustion requirement announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), for a claim of ineffective assistance of trial counsel.  *Martinez* holds that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral

14

proceeding, there was no counsel or counsel in that proceeding was ineffective."[2] 566 U.S. at 17. "By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post conviction counsel." *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013). Because Ground One alleges a  federal due process violation and not the ineffective assistance of trial counsel, *Martinez's* narrow holding will not excuse Disdier's procedural default.

To the extent that Disdier asserts the ineffective assistance of appellate counsel as cause for the procedural default of a claim of trial court error, Disdier must have first exhausted the ineffective assistance of appellate counsel claim. *See Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); *Hill v. Jones*, 81 F.3d 1015, 1029–31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictates that a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse a default of a second claim). Because Florida procedural rules preclude Disdier from filing an untimely state habeas petition alleging the ineffective assistance of appellate counsel, that claim is itself procedurally defaulted. Without independent cause and prejudice showing why the procedurally defaulted ineffective assistance of appellate counsel claim can

---

[2] *Trevino* expanded *Martinez's* exception to states that effectively prohibit a defendant from raising an ineffective assistance of counsel claim on direct appeal. *Trevino*, 569 U.S. at 429.

now be considered, *see Edwards*, 529 U.S. at 452–53, appellate counsel's ineffectiveness cannot excuse the procedural default of Disdier's trial court error claim.  Accordingly, Disdier fails to establish cause and prejudice to overcome the procedural default of ground one.  He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" of actual innocence.  *Schlup*, 513 U.S. at 327.  Because Disdier satisfies neither exception to procedural default, ground one is procedurally barred from federal review.

## II. Ineffective assistance of trial counsel

**Ground Five**

Disdier contends that his trial counsel rendered ineffective assistance by not moving to suppress "wiretap evidence."  First, Disdier claims that a "warrant" authorized a wiretap on telephone number 813-601-4020 for only thirty days between October 8, 2002, and November 7, 2002.  He asserts that "he was recorded on December 1, 2002, providing incriminating testimony on a wiretap," and that "[t]his evidence was very damaging to [him] as it was the only thing directly linking him to the possibility of having knowledge of the crimes his co defendant was involved in regarding the trip to New York."  (Doc. 1 at 13)  Disdier alleges that his trial counsel should have discovered this "critical limitation" and moved to suppress all recordings intercepted between November 8, 2002, and December 3, 2002.  Disdier alleges that suppression of the incriminating statements recorded on December 1, 2002, would have resulted in his acquittal.

Second, Disdier claims that incriminating evidence was derived from a telephone number not listed in any interception order.  He argues that while on their return trip to Florida from New York, he and Rivera purchased a cellular telephone in North Carolina with telephone number (813) 220-9118.  Disdier contends that no warrant authorized wiretapping for this telephone number and that the evidence derived from this phone is "fruit of the poisonous tree which was highly prejudicial when considering it is where law enforcement obtained information to track [him] all the way down the coast to where he was finally pulled over and arrested, as well as incriminating evidence of drugs found in the vehicle."  (Doc. 1 at 13)  Disdier asserts that, absent trial counsel's alleged error, a reasonable probability exists that the trial court would have suppressed this evidence, resulting in his acquittal.

Disdier admits that this ground is unexhausted because he failed to present the ground to the state court but argues entitlement to a merits review under *Martinez*. The respondent argues that Disdier is not entitled to federal review because he fails to satisfy *Martinez*.

Disdier fails to show that ground five is a "substantial" claim.  First, the record includes an order entered by a state circuit court judge on November 8, 2002, extending for thirty days the authorization of interception for phone number 813-601-4020.  Consequently, Disdier cannot establish that his trial counsel rendered ineffective assistance by not moving to suppress the communications intercepted between November 8, 2002, and December 3, 2002, based on an unauthorized wiretap.

17

Second, the record shows that, although no "warrant" authorized a wiretap of telephone number 813-220-9118, the state obtained an order for "cell site location" of the cellular telephone with this phone number.  In response to an earlier order (Doc. 33) the respondent submits a copy of an email from the Tampa Police Department which advises that an order for cell site location was signed by a state court judge allowing law enforcement to track this cellular phone.  (Doc. 35, Ex. 49)[3]

---

[3] The email states as follows:

> On December 2[], 2002; I [*sic*] call was intercepted to 813-601-4020 . . . from a telephone facility of 813-220-9118. During the call JOSE RIVERA advised an individual known as "LUIS" that they were still there but would be back soon. It was apparent from this communication that RIVERA and DISDIER were in New York and were utilizing 813-220-9118 to communicate there and back to Tampa. An order for Cell Site location was drafted by ASA Darrell Dirks and signed by Judge Robert Foster on December 4[], 2002. This order allowed us to track RIVERA and DISDIER and the two female[s] as they traveled from New York to Tampa.

The respondent submits a copy of an investigative report from the Tampa Police Department that includes the following notation about the tracking of the cellular telephone (Doc. 35, Ex. 42 at 26):

> On December 1st 2002 RIVERA called WENDY LEMEN and advised her that he needed her to do a "big favor" for him. I observed RIVERA and LEMEN leave 7535 North Armenia Avenue with RIVERA driving a tan Lexus registered to LEMEN and LEMEN driving a white Lexus registered to RIVERA. Calls were intercepted on or around December 1st 2002 in which RIVERA was advised by "Prieto" that he had "1000 pesos" for him and that he needed RIVERA to travel to New York to receive it. A call was intercepted after that between DISDIER and his girlfriend JENNIFER GONZALEZ in which DISDIER advised her that he needed to travel to New York because they "had a whole one for them." Surveillance was initiated at 7535 Armenia Avenue and Det. Massucci observed RIVERA and DISDIER leave the shop in a [t]an Lexus. Calls were intercepted prior to this in which they advised that they had to "pick up the girls." RIVERA and DISDIER left the 813-601-4020 phone with "BIG BOY" when they left town, but another number that they were using, (813) 220-9118, was identified while they were still in New York City, and cellular site information on that phone was utilized to track them as they traveled back to Tampa on December 4th, 2002. They were stopped in WENDY

(continued…)

Disdier neither presents evidence to substantiate his allegation that any evidence

derived from the cellular telephone is "fruit of the poisonous tree" nor establishes a

basis for suppressing the evidence.  Consequently, Disdier cannot satisfy *Martinez* to

overcome the default of his ground of ineffective assistance of counsel because the

ground is not "substantial."  *See Hittson*, 759 F.3d at 1271 ("Because Hittson has not

alleged any facts to warrant a finding of *Strickland* prejudice, his . . . claim is not

'substantial.'").  Disdier cannot meet the fundamental miscarriage of justice

exception because he presents no new reliable evidence of actual innocence.  *Schlup*,

513 U.S. at 327.  Because Disdier satisfies neither exception to procedural default,

ground five is procedurally barred from federal review.

**Ground Six**

Disdier contends that his trial counsel rendered ineffective assistance by

misadvising him about the maximum penalty he faced if convicted at trial, which

advice caused him to reject a favorable plea offer.  Disdier alleges that before the trial

his counsel advised him that the State extended a plea offer of fifteen years

imprisonment and that he faced a mandatory minimum sentence of twenty-five years

imprisonment if convicted by a jury.  Disdier argues that "counsel's advice was

misleading where the minimum sentence [he] could receive was a 25 year

minimum-mandatory with a possibility of a 30 year sentence being imposed."

(Doc. 1 at 14)  Following his convictions at trial Disdier was sentenced to thirty years

_____

LEMEN'S tan Lexus as they arrived in Tampa. They were stopped at
N. 30th Street and East Fletcher Avenue and DISDIER was
driving . . . .

imprisonment with a twenty-five-year mandatory minimum.  (Doc. 18, Ex. 9)
Disdier claims that absent counsel's alleged misadvice, he would have accepted the
fifteen-year plea offer.

 Disdier admits that this ground is unexhausted because he failed to present the
ground to the state court but argues entitlement to a merits review under *Martinez*.
The respondent argues that Disdier is not entitled to federal review because he fails
to satisfy *Martinez*.

 The Sixth Amendment right to counsel "extends to the plea-bargaining
process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  When an applicant alleges that
counsel's deficient performance caused him to reject a plea offer, he must
demonstrate that, if not for counsel's deficient performance, a reasonable probability
exists that (1) he would have accepted the plea offer and the State would not have
withdrawn the offer; (2) the court would have accepted the plea; and (3) the
conviction or sentence, or both, under the terms of the plea offer would have been
less severe than that which was imposed.  *Lafler*, 566 U.S. at 163–64.

 Disdier fails to satisfy *Lafler's* requirements.  He submits a letter from his trial
counsel in which counsel advises him about the plea offer and possible minimum
mandatory sentence (Doc. 23, Ex. B):

   This is to advise you that [t]he plea offer provided to you in my
   letter of July 20, 2004 . . . will be withdrawn on Tuesday,

> September 7th, 2004.[4] At that time, the State intends to
> proceed to trial. As previously explained to you[,] if you are
> convicted as charged, you face a minimum mandatory
> twenty-five (25) years in Florida State Prison. You admitted to
> the possession of the ecstasy, which carries a maximum
> sentence of fifteen (15) years in Florida State Prison. I would
> strongly advise you accepting the State's offer. It does not make
> sense to expose yourself to a substantially increased prison term
> when the best outcome at trial would still result in exposure up
> to fifteen (15) years in Florida State Prison (the same as the
> State's offer).

The letter shows only that counsel advised Disdier of the minimum

mandatory sentence and the sentence he faced on one charge but does not support

Disdier's contention that his trial counsel misadvised him about the maximum

sentence he faced if convicted of a first-degree felony.  He presents no evidence

establishing either that he would have accepted the plea offer or that the State would

not have withdrawn the offer or that the court would have accepted the plea.

Because Disdier fails to show that his claim of ineffective assistance of trial counsel

has "some merit," he cannot establish that the claim is "substantial" under *Martinez*

to satisfy the cause and prejudice exception to procedural default.  *See Clark*, 988

F.3d at 1331.  He cannot meet the "fundamental miscarriage of justice" exception

because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*,

---

[4] The July 20, 2004, letter from counsel states (Doc. 32-1, App'x A):

> This is to advise you that because there is a new prosecutor on your
> case, the State has made a new offer. Under the terms of the original
> agreement, the State is Agreeable to a maximum sentence of fifteen
> (15) years Florida State Prison. At the conclusion of all the
> Defendant's cases, the Court would determine your sentence. You
> could be sentenced anywhere from probation (very unlikely) to fifteen
> (15) years Florida State Prison. Please advise how you want to
> proceed as soon as possible.

513 U.S. at 327.  Disdier's failure to establish either exception to procedural default renders the ground procedurally barred from federal review.

**Ground Seven**

Disdier contends that his trial counsel rendered ineffective assistance during closing argument by conceding Disdier's "guilt to the element of knowledge of [co-defendant] Rivera's crimes[,] effectively taking any question out of the jury's deliberations, resulting in a finding of guilt on counts two, nine, and eleven." (Doc. 1 at 15)  Disdier asserts in his amended reply that his "contention is that trial counsel was ineffective for conceding that Petitioner had knowledge of the drugs in his co-defendant's vehicle that stemmed the charge[s] he is now convicted of." (Doc. 23 at 18)  Disdier cites the following excerpts of trial counsel's closing argument to support this ground (Doc. 16, Ex. 7, Vol. IV at 535–37):

> And [Rivera] is telling you in this affidavit, what the affidavit is saying is that David Disdier had no knowledge. I'm not going to insult your intelligence and tell you that David Disdier, oh my god, it's all a surprise. No. He may have been aware of and may have known about Mr. Rivera's drug deals, okay, but that's not a crime. Knowledge is not a crime.

> The Court will instruct you what it takes to do that. I'm not going to insult your intelligence and lead you to believe that David Disdier was oblivious to what was going on because obviously that was not occurring. But simply because he knows about it doesn't make him guilty of racketeering, conspiracy to racketeer in the drug charges.

> . . . .

> The judge will give you all of the lengthy instructions . . . and I'm summarizing, okay? I am not reading verbatim and I submit to you that the only evidence that I'm aware of, the only evidence whatsoever that could possibly, possibly, we're not

> talking about beyond and to the exclusion of every reasonable
> doubt, we're talking about possibly implicate David Disdier in
> a racketeering organization or a conspiracy to racketeer, is a
> trip to New York, okay? That's one incident, two drugs, but
> one incident. That's the only thing.

Disdier claims that these comments were highly prejudicial when considered with the jury instruction on conspiracy.[5]  Disdier admits that he did not present this ground to the state court but argues entitlement to federal review under *Martinez*. (Doc. 1 at 16)

To establish that trial counsel provided ineffective assistance by conceding guilt, an applicant must show that such concession exists and that the concession is unreasonable under *Strickland*.  *Florida v. Nixon*, 543 U.S. 175, 189 (2004).  Contrary to Disdier's contention, trial counsel did not concede Disdier's guilt of either the conspiracy charge or any other charged offense.  The cited excerpts of counsel's closing argument include no concession that Disdier had knowledge of the drugs in Rivera's car.  Counsel never recommended that the jury find Disdier guilty of any charged offense.  Disdier fails to show that a reasonable probability exists of a different outcome at trial absent the challenged statements in closing argument. *Nixon*, 543 U.S. at 192 (2004) ("[C]ounsel cannot be deemed ineffective for

---

[5] Disdier cites the following excerpt of the conspiracy instruction (Doc. 16, Ex. 7, Vol. IV at 593):

> A person may become a member of a conspiracy without full
> knowledge of all of the details of the unlawful scheme or the names
> and identities of all of the other alleged conspirators. So if a
> defendant has an understanding of the lawful nature of the plan and
> knowingly and willfully joins in that plan on one occasion, that is
> sufficient to convict him of conspiracy, even though he did not
> participate before and even though he played only a minor part.

attempting to impress the jury with his candor and his unwillingness to engage in a useless charade.") (citation omitted).  He cannot satisfy *Martinez* to overcome the default of this ground because the ground is not "substantial."  Disdier cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because Disdier satisfies neither exception to procedural default, ground seven is procedurally barred from federal review.

**Ground Eight**

Disdier contends that his trial counsel rendered ineffective assistance by not objecting to "misleading" jury instructions.  Before instructing the jury, the trial judge advised the jurors (Doc. 16, Ex. 7, Vol. IV at 583–84):

> Each defendant in this case has been accused of the crimes of conduct or participation in an enterprise through a pattern of racketeering activity. It's also known as RICO.
>
> . . . .
>
> Now, there are two sets of instructions. One applies to defendant Rivera and one applies to defendant Disdier, but they're identical so I'm just going to read this set and I'm going to use the word defendant whenever the defendant's name appears so it's generically applicable to both of them.

Disdier alleges "that using the generic term 'defendant' in the instructions had the same effect as using the conjunctive term 'and/or' in the instructions, which many courts have held improper."  (Doc. 1 at 16)  He argues that the charges between himself and Rivera were not "identical" because he was charged with six crimes while Rivera was charged with eight crimes.  Disdier further argues that the jury was

"not properly instructed to consider each count distinctly and separately as to each co-defendant." (Id.) Disdier admits that he did not present this ground to the state court but argues entitlement to federal review under *Martinez*.[6] (Id.)

Disdier fails to show that the jury instructions were either misleading or confusing. The trial judge instructed the jury that one set of instructions applied to each defendant. Both Disdier and Rivera were tried on counts one, two, nine, ten, eleven and twelve. Rivera was also tried on counts six and seven. The jury acquitted Disdier on count one but convicted Rivera. (Doc. 16, Ex. 7, Vol. IV at 620–23) Both defendants were convicted on counts two, nine, and eleven and acquitted on counts ten and twelve. (Id.) Rivera was convicted on counts six and seven, for which offenses Disdier was not charged. Disdier fails to show that the jury was confused or mislead by the general term "defendant" in the jury instructions.

Moreover, if a jury instruction correctly states the law, the instruction does not deprive an applicant of due process. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). A federal habeas court must defer to the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to

---

[6] Disdier argued in his direct appeal that the trial court erred by giving the allegedly misleading instruction. (Doc. 16, Ex. 11 at 32–34) The state appellate court denied this claim and affirmed Disdier's convictions and sentences. (Doc. 16, Ex. 13)

assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."). When Disdier challenged the jury instructions on direct appeal, the state appellate court found no error. (Doc. 16, Ex. 13) The state appellate court has resolved the question of what would have happened had counsel objected to the instructions as Disdier suggests; the objection would have been overruled. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [the applicant's counsel] done what [the applicant] argues he should have done. . . .").

Disdier cannot satisfy *Martinez* to overcome the default of this ground because the ground is not "substantial." Disdier cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Disdier satisfies neither exception to procedural default, ground eight is procedurally barred from federal review.

**Ground Nine**

Disdier contends that his trial counsel rendered ineffective assistance by not objecting to his convictions for both conspiracy to commit RICO violations (count two) and conspiracy to traffic in cocaine (count eleven) as violative of the Fifth Amendment. Disdier argues that, because "[t]he charges were all brought in the same charging document and were alleged to have occurred during the same period of time," his convictions for both crimes result in a double jeopardy violation.

(Doc. 1 at 17)  Disdier asserts that only one conspiracy existed in his case and that the jury could not convict him of both a RICO conspiracy and a drug trafficking conspiracy.  (Doc. 23 at 22)  Disdier admits that he did not present this ground to the state court but argues entitlement to federal review under *Martinez*.  (Id.)

The Double Jeopardy Clause of the Fifth Amendment protects a defendant from multiple punishments for the same offense.  *Jones v. Thomas*, 491 U.S. 376, 380–381 (1989).  Under *Blockburger v. United States*, 284 U.S. 299 (1932), if a criminal statute requires proof of a fact that another statute does not, then prosecution for the same offense does not exist, even if substantial overlap exists in the evidentiary showing for the two offenses.  The "same-elements" test examines whether each offense contains an element not contained in the other offense.  "[I]f each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishment."  *Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir. 1996).

In Disdier's case the RICO conspiracy and the drug trafficking conspiracy are different crimes and require proof of different elements. [7]  *See* Fla. Stat.

---

[7] Disdier cites in his amended reply *Negron Gil de Rubio v. State*, 987 So. 2d 217 (Fla. 2d DCA 2008), to support his argument that the convictions for both the RICO conspiracy and the drug trafficking conspiracy violate double jeopardy "because there was no evidence to suggest that a first conspiracy was consummated, abandoned, or otherwise terminated prior to the formation of a second conspiracy." (Doc. 23 at 22) In *Negron Gil de Rubio* the state appellate court concluded under Florida law that convictions for both conspiracy to commit drug trafficking and conspiracy to commit racketeering violate double jeopardy principles when the evidence establishes only a single conspiracy with several objectives. 987 So. 2d at 219. Although the state court cited *Blockburger*, the court did not decide the case based on federal law or the Fifth Amendment. Disdier cites no federal case holding that his state convictions for the two conspiracies violates the Fifth Amendment.

§§ 893.135(1)(c), 895.03(4).  *See also* Doc. 16, Ex. 7, Vol. IV at 586–96.

Consequently, Disdier's double jeopardy claim fails because the charges are not the

"same offense" under *Blockburger*.  *Williams*, 78 F.3d at 1513.  Disdier cannot satisfy

*Martinez* to overcome the default of this ground because the ground is not

"substantial."  He cannot meet the "fundamental miscarriage of justice" exception

because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*,

513 U.S. at 327.  Because Disdier satisfies neither exception to procedural default,

ground nine is procedurally barred from federal review.

**Ground Ten**

Disdier contends that his trial counsel rendered ineffective assistance by not

moving to dismiss or moving to suppress evidence of probable tampering with the

heroin.  Disdier alleges that Detective Massucci testified that the police confiscated

531 grams of heroin.  He argues that FDLE crime laboratory analyst Barbara

Vohlken testified that when she tested the heroin, the wight was only 502.7 grams.

Disdier asserts that "[t]he only reasonable conclusion of the significant weight

differences in this evidence is that is had been tampered with, or possibly even

switched out with someone else's evidence." (Doc. 1 at 17)  Disdier claims that

counsel should have objected to this "probable tampering."  (Id.)  Disdier admits that

he did not present this ground to the state court but argues entitlement to federal

review under *Martinez*.  (Id. at 18)

Disdier's conclusion that the difference in weights resulted from tampering is

speculative and unsupported by evidence.  Vohlken testified that she calculated the

weight of the heroin without its packaging.  (Doc. 16, Ex. 7, Vol. III at 416, 419)

Detective Massucci did not testify whether he weighed the heroin with or without

the packaging.  (Id. at 316)  Accordingly, the presence or absence of the packaging

could account for the discrepancy in weight.  Under Florida law, Disdier's trial

counsel would have borne the initial burden of demonstrating a probability, not a

mere possibility, of tampering.  *Murray v. State*, 838 So. 2d 1073, 1082 (Fla. 2002)

(citing *State v. Taplis*, 684 So. 2d 214, 215 (Fla. 5th DCA 1996)).  Florida courts have

determined that a probability of tampering is shown when there is a "gross"

discrepancy in the drug weights.  *See Davis v. State*, 89 So. 3d 1124, 1125–26 (Fla. 2d

DCA 2012).  Because Disdier presents no evidence of tampering, the state trial court

would have denied a motion to suppress.

  Disdier cannot satisfy *Martinez* to overcome the default of this ground because

the ground is not "substantial."  He cannot meet the "fundamental miscarriage of

justice" exception because he presents no "new reliable evidence" that he is actually

innocent.  *Schlup*, 513 U.S. at 327.  Because Disdier satisfies neither exception to

procedural default, ground ten is procedurally barred from federal review.

**Ground Eleven**

  Disdier contends that his trial counsel rendered ineffective assistance by

misleading him about the reasons to not testify.  In his reply Disdier concedes that he

is not entitled to relief on this ground.  (Doc. 23 at 24)

**Ground Twelve**

Disdier contends that the cumulative effect of trial counsel's errors results in a denial of his constitutional rights to the effective assistance of counsel, to due process, and to a fair trial. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due under our Constitution."). Because each of Disdier's claims of ineffective assistance of counsel lacks merit, no cumulative prejudicial effect results. *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). Ground twelve warrants no relief.

### III. Ineffective assistance of appellate counsel

In grounds two, three, and four of his application Disdier alleges that his appellate counsel rendered ineffective assistance. *Strickland* applies to a claim of ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th

Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  To demonstrate deficient performance, Disdier must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance.  *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).  To demonstrate prejudice, Disdier must show that a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief, he would have prevailed on appeal.  *Smith*, 528 U.S. at 285–86.

**Ground Two**

Disdier contends that his appellate counsel rendered ineffective assistance by not challenging on appeal the trial court's denial of his motion for severance.  Disdier alleges that both he and Rivera moved for severance because Disdier planned to defend himself by arguing that Rivera admitted guilt and committed the crimes on his own.  Disdier alleges that the denial of the motion prevented his calling Rivera to testify that Disdier "was just riding along, unknowingly being used as a decoy . . . ." (Doc. 1 at 7)  Disdier claims that he suffered prejudice because he could not establish his defense without Rivera's testimony.  He further claims that law enforcement officers testified at trial to statements by Rivera about "damaged drugs" and Disdier's alleged role as a "business partner."  (Id.)  Disdier contends that this testimony resulted in a violation of *Bruton v. United States*, 391 U.S. 123 (1968),[8]

---

[8] *Bruton* holds that the introduction at a joint trial of a co-defendant's confession that incriminates a defendant by name deprives that defendant of his rights under the Confrontation Clause of the Sixth Amendment, even if the jury is instructed to consider the confession against only the confessing co-defendant. 391 U.S at 126.

because he could not cross-examine Rivera about his statements to the police.  The state appellate court denied this ground in Disdier's state habeas petition.

Before the trial Rivera moved to sever his trial from Disdier.  Rivera argued that Disdier's intention to use Rivera's allegedly exculpatory affidavit as part of his defense at trial warranted severance.  Disdier's trial counsel adopted Rivera's motion.  (Doc. 16, Ex. 5 at 3–5)  The judge initially granted the motion. [9]  However, at a subsequent pretrial hearing, Rivera's counsel argued that Rivera and Disdier had antagonistic defenses and that Disdier had subpoenaed Rivera to testify.  (Doc. 16, Ex. 6 at 4)  Disdier's trial counsel advised that he had not filed a motion for severance but had joined in Rivera's motion.  (Id.)  Disdier's counsel further advised that Rivera's affidavit "basically says that the—the drugs subject to charges against Mr. Disdier were his drugs and his drugs alone."  (Id. at 5)  The prosecutor argued that the affidavit provided no basis for severance.  (Id. at 6)  Disdier's counsel argued

---

[9] Rivera's counsel argued (Doc. 16, Ex. 5 at 3–4):

> The basis of the motion, Judge, is the fact that at the last court date I was provided with some additional discovery by the codefendant that the codefendants tend to—or have intentions of using an affidavit that purports to be an affidavit executed by my client whereby, in effect, he's incriminating himself and exculpating Mr. Disdier.

> It would be my position, Judge, that it would be unfair for me to not only have to defend against the State's allegations, but also the allegations of the defense of the codefendant. It's obvious from that affidavit that, in effect, the defense of Mr. Disdier is that he was present, merely present, but had no guilty knowledge, where, in fact, he's pointing the finger at, at Mr. Rivera. So what I'm asking the Court to do is, for trial purposes, to sever the trials of the two codefendants.

> [PROSECUTOR]: I have no objection.

> THE COURT: Grant the motion.

32

the affidavit was "substantially exculpatory" and that "it's imperative that that testimony or that affidavit be elicited at trial, which obviously would be incriminating to . . . Mr. Rivera and we would join in the motion [for severance] . . . in light of that." (Id. at 7)  The judge denied the motion for severance.

During the trial Disdier's counsel advised the judge that he subpoenaed Rivera as a witness. (Doc. 16, Ex. 7, Vol. IV at 462)  Rivera's counsel advised that Rivera would assert his Fifth Amendment privilege if called to testify and renewed his argument for severance. (Id. at 464–66)  Over Rivera's objection, his affidavit was admitted into evidence, and Didier's counsel read the affidavit to the jury.[10] (Id. at 476–77)

Disdier presents no evidence to substantiate his allegation that the trial judge would have granted severance if trial counsel had moved separately on Disdier's behalf rather than joining in Rivera's motion.  Even if trial counsel had moved to sever the trial, the trial court would have denied the motion, as it denied Rivera's motion, because the motion would have been based on the same argument—that the defendants had antagonistic defenses.  Disdier's assertion that Rivera would have

---

[10] Disdier's counsel read the following to the jury (Doc. 16, Ex. 7, Vol. IV at 476):

> To whom this my [sic] concern. I understand my rights and my word is the truth. So I'm sworn to tell the truth and I hereby say, listing the case number, 02-19806/02, that on December 4, 2002, I, Jose M. Rivera, was illegally transporting drugs in the trunk of the car. We all came from vacation. The passengers[,] Mr. David Disdier and Mrs. Tiffany Almadavar and Mrs. Marie Rodriguez of the vehicle were not aware that I was using them as a decoy. Therefore, I am taking full responsibility.

testified on his behalf at a separate trial is speculative and conclusory. Disdier fails to

demonstrate that appellate counsel's failure to raise this ground on appeal was

objectively unreasonable, or that there was a reasonable probability of success on

appeal had counsel presented the argument. Accordingly, Disdier fails to show that

the state court's rejection of this ground of ineffective assistance of appellate counsel

claim was contrary to, or an unreasonable application of, clearly established federal

law. *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Disdier contends that his appellate counsel rendered ineffective assistance by

not challenging on direct appeal the denial of his motion to suppress both the

contents of the intercepted wire, oral, or electronic communications and the evidence

derived from those communications. To support this ground, Disdier simply recites

the text of the motion to suppress as follows (Doc. 1 at 8):

> Prior to trial Petitioner filed a motion to suppress the foregoing
> evidence on (1) communications being unlawfully intercepted,
> (2) authorization order being insufficient on its face,
> (3) interception not made in conformity with said order,
> (4) intercept application fails to provide a full and complete
> statement of facts and circumstances relied upon to justify
> issuance of intercept order, (5) application fails to provide
> sufficient details regarding particular offense in question,
> (6) application fails to state sufficient facts demonstrating that
> the persons identified are involved in criminal conduct,
> (7) application is devoid of factual assertions sufficient to
> establish probable cause regarding alleged violations of Florida
> Statute 893.135, (8) affidavit in support of application contains:
> unsupported conclusion; boilerplate language regarding drug
> trafficking methods; state information; information provided by
> drug confidential informants devoid of establishment of
> reliability, veracity, or credibility thereof; information readily
> ascertainable and equally indicative of innocent conduct;

> unsubstantiated assertions of alleged factual occurrences absent date and time periods, (9) application fails to state in detail what normal investigations have been tried and have failed or reasonably appear unlikely to succeed if tried, and (10) allegations supporting issuance of intercept order were so conclusory as to violate relevant constitutional standards.

The state appellate court denied this ground of ineffective assistance of appellate counsel in Disdier's state habeas petition.  (Doc. 16, Ex. 15)

Florida law governs whether a state law enforcement officer's affidavit establishes probable cause to issue a wire intercept order.  *United States v. Carrazana*, 921 F. 2d 1557, 1562–63 (11th Cir.), *cert. denied*, 502 U.S. 865 (1991).  "[F]ederal courts must defer to state law on the question of the validity of wiretap orders obtained by state law enforcement officers in state courts."  *United States v. Glinton*, 154 F.3d 1245, 1252–53 (11th Cir. 1998).  "An order authorizing the interception of wire, oral, or electronic communication requires a judicial finding of probable cause for belief that an individual is committing, has committed, or is about to commit an offense listed in section 934.07, probable cause for belief that communications about the offense will be obtained through the interception, and a determination that normal investigative procedures have failed, or reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *State v. Jackson*, 650 So. 2d 24, 27 (1995).  *See* Fla. Stat. § 934.09(3)(a)–(c).  *Cf.* 18 U.S.C. § 2518(3)(a)–(c) (1998).

*Rodriguez v. State*, 297 So. 2d 15, 19 (Fla. 1974), explains that, under the requirements of section 934.09(3), Florida Statutes, probable cause "may be stated as reasonable grounds for belief that the party whose communications are to be

intercepted is committing or is about to commit one of the offenses enumerated in [section] 934.07; that particular communications concerning that offense will be obtained through such interception; and that the facilities or place involved in being used or about to be used in connection with the offense." Probable cause is based upon the "totality of the circumstances." *Carrazana*, 921 F.2d at 1563. *See also Illinois v. Gates*, 462 U.S. 213, 228 (1983) (stating that probable cause is based on whether, "given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

At a pretrial suppression hearing both Detective James Ford and Officer Fernando Enriquez—the affiant and co-affiant for the wiretap application—testified about the investigative techniques used before requesting the wiretap, including interviews with confidential informants, physical surveillance, and pen registers. (Doc. 16, Ex. 5 at 6–39, 53–64) The sworn application for the wiretap also described the investigative techniques used and explained why other techniques were impractical, unsuccessful, or too dangerous if employed. (Doc. 16, Ex. 32) Disdier fails to establish any error in the denial of the motion to suppress. Consequently, he fails to establish that his appellate counsel performed deficiently or that he was prejudiced by appellate counsel's decision to not challenge on appeal the denial of the motion to suppress. Accordingly, Disdier fails to show that the state court's rejection of this ground of ineffective assistance of appellate counsel claim was

contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Four**

Disdier contends that his appellate counsel rendered ineffective assistance by not challenging on direct appeal the denial of his motion to suppress his statements to the police.  Disdier claims that when the police officer read him his *Miranda* rights, he was under the influence of ecstasy, which rendered him unable to knowingly and voluntarily waive those rights.  Disdier further claims that "[u]nder the totality of circumstances of this case, including the fact that [he] was under the influence of drugs and confused by the English language, there is a reasonable probability that had a trained advocate . . . researched, prepared, and presented this reversible error on appeal, a new trial would have been granted."  (Doc. 1 at 10)  The state appellate court denied this ground of ineffective assistance of appellate counsel in Disdier=s state habeas petition.  (Doc. 16, Ex. 15)  Disdier concedes in his amended reply that he is not entitled to relief on this ground.  (Doc. 23 at 8)  Ground four is denied.[11]

Accordingly, Disdier's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Disdier and **CLOSE** this case.

---

[11] Even absent the concession, Disdier is entitled to no relief on the merits. Detective Ford testified at the suppression hearing that, when Disdier was advised of his *Miranda* rights, Disdier expressed both an understanding of his rights and a willingness give a statement to the police. (Doc. 16, Ex. 5 at 11, 21) He further testified that Disdier did not appear under the influence of drugs when he agreed to speak to the police. Detective Fernando Enriquez testified that he advised Disdier of his rights in both English and Spanish. (Id. at 36–37) Accordingly, Disdier fails to show that the state appellate court either unreasonably applied *Strickland* or unreasonably determined the facts. 28 U.S.C. § 2254(d)(1), (d)(2).

**DENIAL OF BOTH
A CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Disdier is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Disdier must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Disdier is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Disdier must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on August 15, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE